UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ROYCE CORLEY,

Plaintiff,

-v.-

CYRUS R. VANCE, JR., DAVID
STUART, JOHN TEMPLES, ADA GREG
WEISS, ELIZABETH PEDERSON,
DANY PERSONNEL, BRIAN CONROY,
MICHAEL DALY, MARK WOODS,
DETECTIVE JESSICA STERLING,
GIANCARLO CAVALLO, GREG SMITH,
NYPD PERSONNEL, SHARI C. HYMAN,
OSE PERSONNEL, MICHAEL T
HAGGERTY, WALTER PANCHYN,
AREA OFFICER JOHN DOE #3,
BACKPAGE.COM, LLC, SPRINT
NEXTEL CORP., BLACKBERRY
CORPORATION F/K/A RESEARCH IN
MOTION CORPORATION, NEW YORK
COUNTY DISTRICT ATTORNEY, and
SUPERVISOR C.O. JOHN DOE #1-2,

Defendants.

---

15 Civ. 1800 (KPF)

**<u>OPINION AND ORDER</u>**

---

KATHERINE POLK FAILLA, District Judge:

For the third time, this Court addresses *pro se* Plaintiff Royce Corley's
claims of statutory and constitutional violations arising from his prosecution in
this District on federal charges involving trafficking of minors and possession of
child pornography. Most recently, on March 27, 2019, the Court found
numerous pleading deficiencies in the operative complaint (the "Complaint")
and dismissed all but three of Plaintiff's 26 claims. Claims against two
Defendants, Blackberry Corporation, f/k/a Research in Motion Corporation

("Blackberry") and Sprint Nextel Corp. ("Sprint"), were not addressed by the Court in March and are the subject of this Opinion and Order.

Plaintiff's claims against Sprint and Blackberry are identical to those he brought against now-dismissed Defendants T-Mobile, Facebook, Google, TWC, MCU, Capital One, and Chase. In brief, Plaintiff alleges violations of his constitutional right to privacy and of several federal statutes, including the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. §§ 2510-2523, the Stored Communications Act ("SCA"), 18 U.S.C. §§ 2701-2713, as well as various state-law claims, all stemming from these Defendants' allegedly unlawful disclosure of Plaintiff's personal information to law enforcement entities.

Defendant Blackberry moves to dismiss all claims against it under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction and under Rule 12(b)(6) for failure to state a claim. In response, Plaintiff moves to transfer his claims against Blackberry to the Northern District of California. Separately, Defendant Sprint moves for summary judgment under Federal Rule of Civil Procedure 56(a), and Plaintiff cross-moves for summary judgment against Sprint and, in the alternative, for additional discovery pursuant to Rule 56(d). Finally, Plaintiff renews his request that the Court impose sanctions on Sprint. For the reasons set forth in this Opinion, Defendants' motions are granted and Plaintiff's motions are denied.

**BACKGROUND**

The Court has previously expounded on the relevant facts, allegations, and procedural posture of this case in two prior opinions. *See Corley* v. *Vance*, No. 15 Civ. 1800 (KPF), 2015 WL 4164377, at *1-2 (S.D.N.Y. June 22, 2015) ("*Corley I*"); *Corley* v. *Vance*, 365 F. Supp. 3d 407, 427-29 (S.D.N.Y. 2019) ("*Corley II*"). It therefore mentions here only what is necessary to resolve the instant motions. Broadly speaking, Plaintiff alleges that he was the target of a conspiracy between and among government entities and private actors, the actions of which eventually culminated in his arrest, prosecution, and conviction on federal criminal charges.

As relevant here, Plaintiff alleges that before his 2012 arrest, members of the Manhattan District Attorney's Office ("DANY") and the New York Police Department (the "NYPD") illegally intercepted his phone calls, text messages, and other electronic communications from Sprint and Blackberry. (Compl. ¶¶ 41, 60). In addition, Plaintiff claims that both companies unlawfully disclosed his personal information and subscriber records to DANY and the NYPD. (*Id.* at ¶ 61). Those disclosures, Plaintiff alleges, resulted in his "unlawful arrest, imprisonment, loss of employment and emotional distress." (*Id.* at ¶ 84).

The Court previously addressed identical allegations against Defendants T-Mobile, Facebook, Google, TWC, MCU, Capital One, and Chase in an 87-page Opinion and Order. *See Corley II*, 365 F. Supp. 3d at 433-35, 450-57. There, the Court dismissed all claims against Facebook for lack of personal

jurisdiction, s*ee id.* at 435, and all claims against the remaining Defendants in this group for failure to state a claim, *see id.* at 466.

## A. Overview of the Parties' Motions

### 1. Blackberry's Motion to Dismiss and Plaintiff's Responses[1]

As previously noted, the Court did not address Plaintiff's claims against Blackberry in *Corley II*. *See Corley II*, 365 F. Supp. 3d at 426 n.1. Blackberry had only been served on February 19, 2019, and its response was not due until April 22, 2019, nearly one month after the publication of the Court's Order. *See id.*

On April 1, 2019, Blackberry filed a notice of appearance in the case (Dkt. #297-98), and requested leave to file a motion to dismiss (Dkt. #299). The Court granted the request (Dkt. #301), and on April 30, 2019, Blackberry filed a motion to dismiss pursuant to Rule 12(b)(2) for lack of personal jurisdiction, and alternatively pursuant to Rule 12(b)(6) for failure to state a claim (Dkt. #303-08).

---

[1]     The Court draws the facts in this section from the Complaint ("Compl." (Dkt. #1)), the well-pleaded allegations of which are assumed to be true for purposes of Blackberry's motion. *See In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) (per curiam). Additionally, throughout this Opinion, the Court has striven to read Plaintiff's "'submissions to raise the strongest arguments they suggest.'" *McLeod* v. *Jewish Guild for the Blind*, 864 F.3d 154, 156 (2d Cir. 2017) (quoting *Bertin* v. *United States*, 478 F.3d 489, 491 (2d Cir. 2007)).

For ease of reference, the Court refers to Blackberry's Memorandum of Law in Support of its Motion to Dismiss the Complaint as "Blackberry Br." (Dkt. #305), Plaintiff's Opposition to Defendant's Motion to Dismiss the Complaint as "Pl. Blackberry Opp." (Dkt. #318), Plaintiff's Cross-Motion to Transfer as "Pl. Blackberry Transfer Br." (Dkt. #317), Blackberry's Reply Memorandum of Law in Support of its Motion to Dismiss the Complaint and Opposition to Plaintiff's Transfer Motion as "Blackberry Reply" (Dkt. #328), and Plaintiff's Reply Memorandum of Law in Support of his Cross-Motion to Transfer as "Pl. Blackberry Transfer Reply" (Dkt. #329). In this Opinion, the Court has adopted the mode of pagination employed by the Court's electronic case filing ("ECF") system in citing to Plaintiff's submissions.

On May 15, 2019, Plaintiff filed his Opposition (Dkt. #318), along with a letter styled as "a motion to transfer to cure for want of jurisdiction" (Dkt. #317). In the latter, Plaintiff requested the Court transfer all claims against "Defendants Facebook, Inc., Blackberry Corp., Custodian #4 and Custodian #7" to the United States District Court for the Northern District of California. (*Id.*).[2] The Court notified the parties that it would treat Plaintiff's motion as a cross-motion with respect to Blackberry's pending motion to dismiss. (Dkt. #320). On June 26, 2019, Blackberry filed its brief in reply. (Dkt. #328). Plaintiff filed his reply in support of his motion to transfer on July 15, 2019. (Dkt. #329).

## 2. Sprint's Motions and Plaintiff's Responses[3]

Sprint had previously filed a motion to dismiss on August 3, 2018. (Dkt. #192-99). That motion was based on a representation from the company that a

---

[2] On March 27, 2019, finding that it lacked both general and specific jurisdiction over Facebook, the Court dismissed all claims against it. *See Corley II*, 365 F. Supp. 3d at 433. Because of that, the Court only considers Plaintiff's motion to transfer with respect to Blackberry.

[3] The facts discussed in connection with Sprint's motion are largely drawn from Sprint's Local Rule 56.1 Statement of Undisputed Facts ("Sprint 56.1" (Dkt. #285)), and Plaintiff's Local Rule 56.1 Statement of Undisputed Facts ("Pl. 56.1" (Dkt. # 300)). Citations to a party's Rule 56.1 Statement incorporate by reference the documents and testimony cited therein.

The Court has also considered three separate Affidavits of Calli Keep (referred to as "Aug. 2018 Keep Aff." (Dkt. #195); "Feb. 2019 Keep Aff." (Dkt. #287); and "April 2019 Keep Aff." (Dkt. #302-2)); the Affidavit of Frank T. Spano ("Spano Aff." (Dkt. #288)); and the Affidavit of Felicia Lueker ("Lueker Aff." (Dkt. #302-3)); as well as the exhibits attached to those affidavits.

For ease of reference, the Court refers to the parties' briefing as follows: Sprint's Memorandum of Law in Support of its Motion for Summary Judgment as "Sprint Br." (Dkt. #284); Plaintiff's Memorandum of Law in Opposition to Sprint's Motion for Summary Judgment and in Support of Plaintiff's Cross-Motion for Summary Judgment as "Pl. Sprint Br." (Dkt. #300); Sprint's Reply Memorandum of Law in Further Support of Sprint's Motion for Summary Judgment and in Opposition to Plaintiff's Cross-Motion for Summary Judgment as "Sprint Reply" (Dkt. #302); and Plaintiff's Reply Brief in

search of its records did not reveal that it had received or responded to any subpoena or other request from a law enforcement agency for Plaintiff's cellphone records. (*Id.*). Because it relied on documents outside the pleadings, Sprint asked the Court to convert its motion into one for summary judgment. (*Id.*).

On January 31, 2019, Sprint informed the Court that it had "uncovered information indicating that in December 2011, Sprint received a grand jury subpoena for [Plaintiff's] cellphone records and complied with it." (Dkt. #264). As a result, Sprint requested permission to withdraw its previously-filed motion to dismiss and to file a renewed motion for summary judgment. (*Id.*). The Court granted Sprint's request and set a renewed briefing schedule. (Dkt. #266). Sprint filed the instant motion for summary judgment on February 28, 2019. (Dkt. #283-88). Plaintiff filed his combined opposition to Sprint's motion and cross-motion for summary judgment on April 1, 2019. (Dkt. #300). Sprint filed its combined reply brief in support of it motion and opposition to Plaintiff's motion on April 1, 2019 (Dkt. #302), and Plaintiff filed his reply brief in support of his motion on May 15, 2019 (Dkt. #319).

---

Further Support of Plaintiff's Cross-Motion for Summary Judgment as "Pl. Sprint Reply" (Dkt. #319). Separately, Plaintiff's motion for sanctions is referred to as "Pl. Sanctions Br." (Dkt. #267).

**DISCUSSION**

A.   **The Court Grants Blackberry's Motion to Dismiss the Complaint**

1.   **The Court Grants Blackberry's Motion to Dismiss Pursuant to Rule 12(b)(2)**

Plaintiff brings four claims against Blackberry: (i) a violation of his right to privacy under the First and Fourth Amendments of the Constitution; (ii) a violation of the SCA; (iii) negligent infliction of emotional distress; and (iv) gross negligence.   Blackberry moves to dismiss the claims against it for lack of personal jurisdiction pursuant to Rule 12(b)(2), and in the alternative for failure to state a claim pursuant to Rule 12(b)(6).   In response, Plaintiff moves to transfer the claims against Blackberry to the Northern District of California.

a.   **Applicable Law**

The Court begins by addressing Blackberry's personal jurisdiction arguments.   When a defendant brings a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2), "the plaintiff bears the burden of establishing that the court has [personal] jurisdiction over the defendant." *DiStefano* v. *Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001) (citation omitted); *accord In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013).   "Prior to discovery, a plaintiff challenged by a jurisdiction testing motion may defeat the motion by pleading in good faith, legally sufficient allegations of jurisdiction.   At that preliminary stage, the plaintiff's *prima facie* showing may be established solely by allegations." *Dorchester Fin. Sec., Inc.* v. *Banco BRJ, S.A.*, 722 F.3d 81, 84-85 (2d Cir. 2013) (per curiam) (citation omitted).   All jurisdictional allegations "are construed in the light most favorable to the

7

plaintiff and doubts are resolved in the plaintiff's favor[.]" *A.I. Trade Fin., Inc.* v. *Petra Bank*, 989 F.2d 76, 79-80 (2d Cir. 1993). However, the court "will not draw argumentative inferences in the plaintiff's favor" and need not "accept as true a legal conclusion couched as a factual allegation[.]" *In re Terrorist Attacks*, 714 F.3d at 673 (citations omitted); *see also Licci ex rel. Licci* v. *Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59 (2d Cir. 2012).

District courts deciding motions to dismiss for lack of personal jurisdiction typically engage in a two-part analysis. *First*, the court assesses whether there is "a statutory basis for exercising personal jurisdiction." *Marvel Characters, Inc.* v. *Kirby*, 726 F.3d 119, 128 (2d Cir. 2013). In making this determination, the court "applies the forum state's personal jurisdiction rules" unless a federal statute "specifically provide[s] for national service of process." *PDK Labs, Inc.* v. *Friedlander*, 103 F.3d 1105, 1108 (2d Cir. 1997) (internal quotation marks and citations omitted). *Second*, if there is a statutory basis for personal jurisdiction, the court must decide whether the exercise of jurisdiction comports with due process. *Sonera Holding B.V.* v. *Çukurova Holding A.Ş.*, 750 F.3d 221, 224 (2d Cir. 2014) (per curiam).

It is well established that "[a] district court's personal jurisdiction is determined by the law of the state in which the court is located." *Spiegel* v. *Schulmann*, 604 F.3d 72, 76 (2d Cir. 2010). New York's long-arm statute authorizes courts to exercise personal jurisdiction "over any non-domiciliary ... who in person or through an agent ... transacts any business within the state," so long as the cause of action "aris[es] from" that transaction. N.Y. C.P.L.R.

§ 302(a)(1). Accordingly, a court may exercise personal jurisdiction over a non-domiciliary if two conditions are met: "first, the non-domiciliary must transact business within the state; second, the claims against the non-domiciliary must arise out of that business activity." *Aquiline Capital Partners LLC* v. *FinArch LLC*, 861 F. Supp. 2d 378, 386 (S.D.N.Y. 2012) (quoting *CutCo Indus., Inc.* v. *Naughton*, 806 F.2d 361, 365 (2d Cir. 1986)).

### b. Analysis

#### i. The Court Lacks General Jurisdiction over Blackberry

A court's exercise of general jurisdiction under New York Civil Practice Law and Rules § 301 requires that "a company has engaged in such a continuous and systematic course of doing business in New York that a finding of its presence in New York is warranted." *Sonera Holding B.V.*, 750 F.3d at 224 (internal quotations and citations omitted); *see generally Daimler AG* v. *Bauman*, 571 U.S. 117, 137-38 (2014). Blackberry's "continuous activity of some sort[] within a state ... is not enough to support the demand that the corporation be amendable to suits unrelated to that activity." *Goodyear Dunlop Tires Ops.* v. *Brown*, 564 U.S. 915, 927 (2011) (internal quotation marks omitted) (quoting *Int'l Shoe Co.* v. *State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 318 (1945)). Rather, a corporation's "affiliations with the State" must be "so 'continuous and systematic' as to render [it] essentially at home in the forum State." *Id.* at 919 (quoting *Int'l Shoe*, 326 U.S. at 317).

Although Blackberry is a Delaware corporation with its principal place of business in San Ramon, California, the corporation is registered to do business in New York, and operates one office in the city. However, these contacts do not rise to the level required to "render [Blackberry] essentially at home in [New York]." *Goodyear*, 564 U.S. at 919. Blackberry's office in New York must be viewed relative to the corporation's overall activity "nationwide and worldwide," a view that dramatically lessens its significance. *Daimler*, 571 U.S. at 143. Only 25 people, or less than one percent of Blackberry's U.S.-based workforce, are located in the New York office. (Bennett Decl. ¶ 2). Furthermore, "[t]he mere fact of a defendant's being registered to do business is insufficient to confer general jurisdiction in a state that is neither its state of incorporation nor its principal place of business." *D'Amico Dry D.A.C.* v. *Primera Mar. (Hellas) Ltd.*, 348 F. Supp. 3d 365, 387 (S.D.N.Y. 2018).

Plaintiff cannot support an argument that Blackberry's activities in New York constitute an exceptional case where general jurisdiction would properly lie over a corporation "in a forum other than its formal place of incorporation or principal place of business." *Daimler*, 571 U.S. at 139 n.19. Accordingly, the Court may not exercise general jurisdiction over Blackberry.

### ii. The Court Lacks Specific Jurisdiction over Blackberry

Likewise, Blackberry is not subject to specific jurisdiction. A defendant transacts business within a state if it has "purposefully availed [it]self of the privilege of conducting activities within New York and thereby invoked the benefits and protections of its laws." *United States* v. *Prevezon Holdings Ltd.*,

10

122 F. Supp. 3d 57, 76 (S.D.N.Y. 2015) (quoting *Reich* v. *Lopez*, 38 F. Supp. 3d 436, 457 (S.D.N.Y. 2014)).  Here, Blackberry has plainly availed itself of New York law.  In addition to being registered to do business in New York, the company maintains an office in the city.  (Bennett Decl. ¶ 6).  Blackberry's contacts meet the low threshold specified in N.Y. C.P.L.R. § 302(a)(1) — a threshold that courts have found may be satisfied by a single act within New York.  *See Licci*, 673 F.3d at 62.  Accordingly, the Court considers whether Plaintiff's claim against Blackberry "arises out" of Blackberry's business activity within New York State.  *See Aquiline Capital Partners LLC*, 861 F. Supp. 2d at 386.

The Complaint contains no allegations that Blackberry has engaged in any conduct in New York giving rise to a cause of action against it.  Further, to the extent that Plaintiff's claims are premised on Blackberry's compliance with legal process, such process would have been directed to Blackberry's headquarters in San Ramon, California.  (Bennett Decl. ¶¶ 5, 8).  Blackberry would have responded to those requests either from its headquarters, or from Washington, D.C. or Canada, where the company's subpoena compliance personnel are located.  (*Id.* at ¶ 8).  Accordingly, New York's long-arm statute does not confer specific jurisdiction over Plaintiff's claim against Blackberry. *See Best Van Lines, Inc.* v. *Walker*, 490 F.3d 239, 246 (2d Cir. 2007) (finding that to support jurisdiction under N.Y. C.P.L.R. § 302, there must be "an articulable nexus, or a substantial relationship, between the claim asserted

and the actions that occurred in New York"). In the absence of personal jurisdiction, Blackberry's motion to dismiss the Complaint against it is granted.

### 2. The Court Denies Plaintiff's Motion to Transfer the Case as to Blackberry

In response to Blackberry's motion to dismiss for lack of personal jurisdiction, Plaintiff moved pursuant to 28 U.S.C. §§ 1631 and 1406(a) to transfer all claims against Blackberry to the Northern District of California.

The decision to transfer or dismiss is committed to the Court's broad discretion. *See Minnette* v. *Time Warner*, 997 F.2d 1023, 1026 (2d Cir. 1993). However, the party seeking transfer "carries the burden of making out a strong case for transfer." *Filmline (Cross-Country) Prods., Inc.* v. *United Artists Corp.*, 865 F.2d 513, 521 (2d Cir. 1989)). Section 1631 requires a court to transfer a case "to any other court in which the action or appeal could have been brought at the time it was filed or noticed," if (i) the transferor court finds that it lacks jurisdiction over the case, and (ii) making such a transfer "is in the interest of justice." *See* 28 U.S.C. § 1631. Pursuant to 28 U.S.C. § 1406, "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). Thus, pursuant to either statute, a court may only transfer an action when the transfer would be in the interest of justice.

Conversely, a court "may, in the interest of justice, decide not to transfer if it concludes that the case is a 'sure loser' on the merits." *Moreno-Bravo* v. *Gonzales*, 463 F.3d 253, 263 (2d Cir. 2006). "Whether or not the suit has any

possible merit bears significantly on whether the court should transfer, and if it does not, the court should not waste the time of another court by transferring it." *Id.* (internal quotations and citations omitted). Here, as discussed in *Corley II* and in the next section of this Opinion, Plaintiff's claims against Blackberry are unlikely to succeed. For that reason, the Court "will not waste judicial resources by transferring a case that is clearly doomed." *Daniel* v. *Am. Bd. of Emergency Med.*, 428 F.3d 408, 436 (2d Cir. 2005).

Plaintiff's arguments to the contrary are unavailing. *First*, Plaintiff asserts that transfer is in the interest of justice because his claims against Blackberry would be time-barred upon refiling. (Pl. Blackberry Opp. 2). While generally a compelling reason for transfer, courts have expressly found that even in such circumstances, transfer should be denied when the claims lack merit. *See Lyons* v. *Rienzi & Sons, Inc.*, No. 09 Civ. 4253 (JBW), 2012 WL 1339442, at *1 (E.D.N.Y. Apr. 17, 2012). *Second*, the Court is unpersuaded by Plaintiff's conclusory allegation that his claims would fare better under California's "plaintiff-friendly" laws. (Pl. Reply 3-4). Accordingly, Plaintiff's motion to transfer is denied.

### 3. Plaintiff's Claims Against Blackberry Fail on the Merits

Because the Court lacks personal jurisdiction to consider Plaintiff's claims against Blackberry, it arguably should not consider the merits of these claims. *See Cornwell* v. *Credit Suisse Grp.*, 666 F. Supp. 2d 381, 385-86 (S.D.N.Y. 2009) ("[A]bsent authority to adjudicate, the Court lacks a legal basis to grant any relief, or even consider the action further."); *Norex Petroleum Ltd.*

v. *Access Indus.*, 540 F. Supp. 2d 438, 449 (S.D.N.Y. 2007) (dismissal for lack of jurisdiction "moots, and thus terminates, all other pending motions"). However, as just mentioned, the underlying merits of Plaintiff's case against Blackberry inform the Court's decision to dismiss, rather than transfer the case, for lack of personal jurisdiction. *See Daniel*, 428 F.3d at 436 (explaining that a court's decision to transfer or dismiss a case over which it lacks jurisdiction includes a power of limited review of the merits). For that reason, and to promote efficiency for the parties, the Court will address Blackberry's merits arguments.

As a preliminary matter, the Court notes that the claims Plaintiff raises against Blackberry are identical to claims against other Defendants that the Court dismissed in *Corley II*. *See generally Corley II*, 365 F. Supp. 3d at 445-46. Plaintiff, for his part, does not respond to any of Blackberry's arguments on the merits in his Opposition. As such, the discussion that follows is largely a reiteration of the Court's March 2019 analysis of the identical claims.

### a. **Applicable Law**

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court must "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber* v. *Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted). Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

plausible on its face.'" *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007)). "While *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to 'nudge [a plaintiff's] claims across the line from conceivable to plausible.'" *In re Elevator Antitrust Litig.*, 502 F.3d at 50 (quoting *Twombly*, 550 U.S. at 570).

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco* v. *MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010). "Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint." *Chambers* v. *Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (quoting *Int'l Audiotext Network, Inc.* v. *Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (per curiam)); *see generally Goel* v. *Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (discussing documents that a court may properly consider on a motion to dismiss).

### b. Analysis

#### i. Plaintiff's Privacy Claim Fails

In Count XIII of the Complaint, Plaintiff brings a claim under 42 U.S.C. § 1983 for violations of his right to privacy under the First and Fourth Amendments of the Constitution. (Compl. ¶ 84). Plaintiff alleges that Blackberry, among other companies, violated his right to privacy "by

intentionally accessing, intercepting or disclosing Plaintiff's communications, personal information and financial records, which Plaintiff had a reasonable expectation of privacy in, or willfully aided, abetted, counseled, commanded and induced the acts thereof[.]" (*Id.*).

Plaintiff's privacy claim against Blackberry suffers from two deficiencies. *First*, Plaintiff fails to allege state action. *See DeMatteis* v. *Eastman Kodak Co.*, 511 F.2d 306, 311 (2d Cir. 1975) (finding that private parties generally are not liable under § 1983). As previously clarified by Plaintiff, he "does not plead any conspiracy with respect to [Blackberry]," but merely alleges that the company "aided and abetted state actors." (Dkt. #269). However, Plaintiff does not supply any factual allegations concerning joint activity between Blackberry and any state actor. And although a private individual can be held liable under § 1983 for "operat[ing] as a willful participant in joint activity with the State or its agents," *Abdullahi* v. *Pfizer, Inc.*, 562 F.3d 163, 188 (2d Cir. 2009), courts have been clear that "merely supplying information to [law enforcement] does not make the supplier of information a state actor," *Luciano* v. *City of New York*, No. 09 Civ. 359 (DC), 2009 WL 1953431, at *2 (S.D.N.Y. July 2, 2009). Absent factual allegations of joint activity, Plaintiff's claim as to Blackberry fails.

*Second*, and more fundamentally, the Complaint is devoid of *any* factual allegations concerning Blackberry that could support Plaintiff's privacy claim. Plaintiff's conclusory allegation that Blackberry violated his right to privacy by intercepting and voluntarily disclosing his personal information, without any

specific allegations, is insufficient to defeat a motion to dismiss. Because a complaint must provide "the grounds upon which [the plaintiff's] claim rests through factual allegations sufficient to raise a right to relief *above the speculative level*," *Twombly*, 550 U.S. at 555 (emphasis added), Plaintiff's privacy claim at Count XIII of the Complaint does not survive a motion to dismiss brought by Blackberry for failure to state a claim.

### ii.    Plaintiff's SCA Claim Fails

Plaintiff's second federal claim against Blackberry, in Count XVII of his Complaint, is for a violation of the SCA, which governs the privacy of stored Internet communications. (Compl. ¶¶ 88-89). The SCA mandates different standards the Government must satisfy to compel disclosure of different types of communications, *see* 18 U.S.C. § 2703, and imposes restrictions on voluntary disclosure by providers, *see* 18 U.S.C. § 2702.

In brief, Plaintiff alleges that Blackberry knowingly divulged his records to DANY and the NYPD in violation of the SCA. (Compl. ¶ 89). These threadbare allegations are not sufficiently detailed to survive a motion to dismiss. Plaintiff merely recites the statutory language, alleging that various service providers unlawfully disclosed his subscriber records without the required legal process or notice. (*Id.* at ¶¶ 26, 86, 89). But Plaintiff brings his claims pursuant to § 2702, which governs whether a provider can disclose information to the Government voluntarily. (*Id.* at ¶ 89). And under § 2702, a provider "may divulge the contents of a communication" to a law enforcement

agency, if the contents "appear to pertain to the commission of a crime." 18 U.S.C. § 2702(b)(7).

The problem for Plaintiff is that he fails to offer any factual allegations regarding Blackberry's violation of this provision. Instead, Plaintiff summarily asserts that all of the Defendants in this category voluntarily disclosed his information to law enforcement agencies, during the period of time that he was under investigation by those agencies. (Compl. ¶¶ 29, 87, 89). Because the Complaint does not sufficiently allege how Blackberry violated the SCA in the course of any disclosures it may have made, the SCA claim against it fails.

### iii.    Plaintiff's Claim for Negligent Infliction of Emotional Distress Fails

In addition to his federal claims, Plaintiff brings two state-law claims, beginning with negligent infliction of emotional distress in Count XXII of the Complaint. (Compl. ¶ 95). A claim for negligent infliction of emotional distress under New York law requires "showing 'a breach of a duty of care resulting directly in emotional harm ... even though no physical injury occurred,' as long as 'the mental injury [is] a direct, rather than a consequential, result of the breach, and the claim ... possess[es] some guarantee of genuineness." *Mortimer* v. *City of New York*, No. 15 Civ. 7186 (KPF), 2018 WL 1605982, at *27 (S.D.N.Y. Mar. 29, 2018) (alterations in original) (quoting *Taggart* v. *Costabile*, 14 N.Y.S.3d 388, 397 (2d Dep't 2015)). Nonetheless, "New York courts have expressed a 'longstanding reluctance to recognize causes of action for negligent infliction of emotional distress, especially in cases where the plaintiff suffered

no independent physical or economic injury.'" *Colo. Capital Invs., Inc.* v. *Owens*, 304 F. App'x 906, 908 (2d Cir. 2008) (summary order) (quoting *Broadnax* v. *Gonzalez*, 2 N.Y.3d 148, 153 (2004)).

Plaintiff's claim fails for three reasons. *First*, as the Court remarked in *Corley II*, 365 F. Supp. 3d at 454, in a Complaint that is at times light on factual allegations, Plaintiff's allegations regarding negligent infliction of emotional distress are the lightest. In its totality, the relevant allegation is as follows:

> The defendants' intentional and grossly negligent acts and omissions collectively caused the Plaintiff to suffer emotional distress from the false arrest, public disclosure of personal matters, searches of the body, home and office, over one year of oppressive confinement on Rikers Island, loss of employment, public scrutiny in the media and loss of consortium.

(Compl. ¶ 64). The Court observes that Plaintiff has not made a single factual allegation regarding Blackberry's conduct to support this claim. The claim thus falls far short of the standard for pleading negligent infliction of emotional distress. Among other things, Plaintiff does not indicate what "intentional and grossly negligent acts" Blackberry committed to form the basis of this claim.

*Second*, Plaintiff does not allege any special duty owed to him by Blackberry, as required under New York law. *See Mortise* v. *United States*, 102 F.3d 693, 696 (2d Cir. 1996) ("The duty in such cases must be specific to the plaintiff, and not some amorphous, free-floating duty to society."). *Third*, and finally, the conduct that Plaintiff ascribes to Blackberry is "intentional and deliberate and allegedly in [its] nature offensive" — and therefore "outside the

ambit of actionable negligence." *Jones* v. *Trane*, 591 N.Y.S.2d 927, 930 (Sup. Ct. Onondaga Cty. 1992). Like its sister courts in this District, "[t]his Court is mindful that "New York Courts have rejected uniformly such attempts to transmogrify intentional torts into 'negligence.'" *Wahlstrom* v. *Metro-N. Commuter R. Co.*, 89 F. Supp. 2d 506, 532 (S.D.N.Y. 2000) (internal citations and quotations omitted). It finds here similarly that Plaintiff's claim for negligent infliction of emotional distress against Blackberry fails to state a claim for relief.

### iv. Plaintiff's Claim for Gross Negligence Fails

Plaintiff's final claim against Blackberry, in Count XXIV of his Complaint, is for gross negligence, and it too is predicated on Blackberry's alleged disclosure of his personal information to law enforcement. (Compl. ¶ 97). Specifically, Plaintiff alleges that Blackberry disclosed his personal information to state actors, despite owing him "the duty of protecting personal information, communications and financial records from disclosure to unauthorized third-parties." (*Id.*).

The fact remains that gross negligence "differs in kind as well as degree from ordinary negligence." *Kinsey* v. *Cendant Corp.*, No. 04 Civ. 582 (RWS), 2005 WL 1907678, at *7 (S.D.N.Y. Aug. 10, 2005) (quoting *Sutton Park Dev. Corp. Trading Co. Inc.* v. *Guerin & Guerin Agency, Inc.*, 745 N.Y.S.2d 622, 624 (3d Dep't 2002)). To state a claim for gross negligence, a plaintiff must allege conduct by a defendant that "'smacks of intentional wrongdoing'" or "evinces a reckless disregard for the rights of others." *Purchase Partners, LLC* v. *Carver*

*Fed. Sav. Bank*, 914 F. Supp. 2d 480, 497 (S.D.N.Y. 2012) (quoting *Farash* v. *Cont'l Airlines, Inc.*, 574 F. Supp. 2d 356, 367-68 (S.D.N.Y. 2008)). As such, "a party is grossly negligent when it fails to exercise even slight care or slight diligence." *Goldstein* v. *Carnell Assocs., Inc.*, 906 N.Y.S.2d 905, 905-06 (2d Dep't 2010) (internal quotations omitted).

The alleged disclosure by Blackberry of Plaintiff's personal information does not rise to the level of gross negligence. The Court has already determined that Plaintiff has not adequately alleged that Blackberry disclosed his personal information in violation of any constitutional or statutory right. As a result, the Court cannot find that any of the alleged disclosures were "so extremely careless that [they were] equivalent to recklessness." *Travelers,* 204 F. Supp. 2d at 644.

### 4. The Court Denies Plaintiff's Motion for Leave to Amend His Complaint as to Blackberry

As a final response to Blackberry's motion, Plaintiff requests leave to amend his Complaint to cure deficiencies identified in *Corley II*, several of which are reiterated here. (Pl. Blackberry Opp. 2). Previously, the Court denied Plaintiff leave to amend on the basis that

> [T]he Court … considered the supplemental arguments and evidence that Plaintiff presented in his submissions to the Court, including his Opposition. The Court … discussed these arguments and evidence throughout its Opinion; and, as presaged by these discussions, the Court [was] confident that any attempt by Plaintiff to replead the claims the Court has dismissed would be futile. *See, e.g., Cuoco* v. *Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (affirming denial of motion to amend where complaint's deficiencies were "substantive" and thus repleading was futile)[.]

21

*Corley II*, 365 F. Supp. 3d at 463.  Plaintiff asked the Court to revisit this finding on May 15, 2019.  (Dkt. #318).  Then, and now, the Court finds no reason to do so.  Plaintiff's motion for leave to amend is therefore denied, and the claims against Blackberry are dismissed with prejudice.

**B.      The Court Grants Sprint's Motion for Summary Judgment**

As might be expected, the allegations Plaintiff brings against Sprint are nearly identical to those brought against Blackberry:  Plaintiff alleges that Sprint disclosed his personal communications and information to government entities without proper legal authority.  (Compl. ¶¶ 84, 86, 89, 95, 97).  Plaintiff claims violations of the Constitution and of several federal statutes, as well as two state-law claims, against Sprint.  (*Id.*).  However, Plaintiff also contests the manner and timing of Sprint's disclosures in this case.  Due to the discrepancy in Sprint's filings, and Plaintiff's consequent skepticism of Sprint's account of events, the Court begins its analysis with an overview of Sprint's subpoena search process, before addressing Plaintiff's evidentiary concerns and the merits of his claims.

**1.      Sprint's Request to File a Revised Motion**[4]

On January 31, 2019, Sprint requested leave to file a renewed motion for summary judgment, disclosing that the company had in fact received at least one grand jury subpoena for Plaintiff's cellphone records and complied with it.

---

[4]      The facts in this section are drawn principally from the February 28, 2019 affidavit of Calli Keep, Sprint's Custodian of Records.  (Dkt. #287).  Ms. Keep's affidavit is based on her personal knowledge of Sprint's practices and procedures for complying with subpoenas, and the date in Sprint's subpoena tracking system.

(Dkt. #264). In its prior motion to dismiss, which was still pending at the time, Sprint had represented to the Court that Sprint "has no record of receiving a subpoena, request, or other documentation asking it to provide information concerning Plaintiff's account." (Dkt. #194).

Sprint explained its divergent representations to the Court as follows: Prior to January 2019, Sprint's searches of its internal subpoena tracking system, referred to as "STS," did not produce any results for Plaintiff's cellphone records. (Feb. 2019 Keep Aff. ¶¶ 4, 5). For this reason, Sprint represented to the Court in connection with its August 2018 motion to dismiss that a search in its system of Plaintiff's telephone number, which ended with the digits 5474, did not produce any information regarding subpoena requests. (Dkt. #195).

However, on January 20, 2019, Plaintiff emailed Sprint additional account information that had not come to light during Sprint's prior searches. (Feb. 2019 Keep Aff. ¶ 6; *see also* Dkt. #264). Based upon the new information, Sprint ran additional searches. (Feb. 2019 Keep Aff. ¶¶ 6-8). Those accounts were associated with "Ron Iron," Plaintiff's alias, and contained a telephone number ending in the digits 6736. (*Id.* at ¶ 6). Sprint searched for records using the 6736 telephone number, and discovered that it had received four subpoenas asking it to provide information regarding Plaintiff's account. (Sprint 56.1 ¶¶ 6-7). These subpoenas were served by DANY between November 2011 and January 2012. (Sprint 56.1 ¶ 6; Feb. 2019 Keep Aff. ¶ 8).

In response to the subpoenas, Sprint produced call detail records, subscriber information, and payment information. (Sprint 56.1 ¶ 7).

Because the underlying subpoenas no longer existed within Sprint due to the company's document retention policy (Feb. 2019 Keep Aff. ¶ 8; Sprint 56.1 ¶ 10), Sprint provided the Court and Plaintiff with screenshots of the STS records containing information for Plaintiff (Feb. 2019 Keep Aff., Ex. 1-4).[5] In addition, Sprint attempted to acquire the original subpoenas. On February 1, 2019, Sprint contacted DANY, which informed Sprint that the subpoenas had been sent to the United States Attorney's Office for the Southern District of New York. (Lueker Aff. ¶ 5). Sprint then contacted the U.S. Attorney's Office, which responded with two Government exhibits from Plaintiff's criminal trial, the only responsive records that it was able to locate. (*Id.* at ¶¶ 7-12). Those exhibits included: (i) Government Exhibit 79, which was comprised of Plaintiff's basic subscriber records, provided in response to one of the subpoenas (Spano Decl. ¶ 3); and (ii) Government Exhibit 139, a stipulation entered into by the parties at Plaintiff's criminal trial that Government Exhibit 79 consisted of Sprint's business records that were admissible at trial (*id.* at ¶ 4).

### 2. Applicable Law

Under Federal Rule of Civil Procedure 56(a), a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

---

[5] At the time Plaintiff was a customer of Sprint, it was the company's policy to retain documents for two years. (Feb. 2019 Keep Aff. ¶ 13).

law." Fed. R. Civ. P. 56(a); *Celotex Corp.* v. *Catrett*, 477 U.S. 317, 322 (1986).[6] A fact is "material" if it "might affect the outcome of the suit under the governing law," and is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Jeffreys* v. *City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (citing *Anderson*).

The moving party bears the initial burden of demonstrating "the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. The movant may discharge its burden by showing that the nonmoving party has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* At 322; *see also Selevan* v. *N.Y. Thruway Auth.*, 711 F.3d 253, 256 (2d Cir. 2013) (finding summary judgment appropriate where the non-moving party failed to "come forth with evidence sufficient to permit a reasonable juror to return a verdict in his or her favor on an essential element of a claim" (internal quotation marks omitted)).

If the moving party meets this burden, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial" using

---

[6] The 2010 Amendments to the Federal Rules of Civil Procedure revised the summary judgment standard from a genuine "issue" of material fact to a genuine "dispute" of material fact. *See* Fed. R. Civ. P. 56, advisory comm. notes (2010 Amendments) (noting that the amendment to "[s]ubdivision (a) ... chang[es] only one word — genuine 'issue' becomes genuine 'dispute.' 'Dispute' better reflects the focus of a summary-judgment determination."). This Court uses the post-amendment standard, but continues to be guided by pre-amendment Supreme Court and Second Circuit precedent that refer to "genuine issues of material fact."

affidavits or otherwise, and cannot rely on the "mere allegations or denials" contained in the pleadings. *Anderson*, 477 U.S. at 248; see also *Wright* v. *Goord*, 554 F.3d 255, 266 (2d Cir. 2009). In other words, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co.* v. *Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and cannot rely on "mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," *Knight* v. *U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986).

"When ruling on a summary judgment motion, the district court must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Dallas Aerospace, Inc.* v. *CIS Air Corp.*, 352 F.3d 775, 780 (2d Cir. 2003). However, in considering "what may reasonably be inferred" from witness testimony, the court should not accord the non-moving party the benefit of "unreasonable inferences, or inferences at war with undisputed facts." *Berk* v. *St. Vincent's Hosp. & Med. Ctr.*, 380 F. Supp. 2d 334, 342 (S.D.N.Y. 2005) (citing *County of Suffolk* v. *Long Island Lighting Co.*, 907 F.2d 1295, 1318 (2d Cir. 1990)).

### 3. The Court Grants Sprint's Motion for Summary Judgment

#### a. The Court May Consider the Keep Affidavit and the Attached Exhibits in Resolving the Parties' Cross-Motions for Summary Judgment

In support of its motion, Sprint offered sworn statements from Calli Keep, its Custodian of Records. (Dkt. #287). As discussed *supra*, Ms. Keep's

February 2019 affidavit (the "Keep Affidavit") establishes that Sprint disclosed Plaintiff's telephone records in response to four subpoenas. (*Id.*). Plaintiff attacks the Keep Affidavit and the attached exhibits as inadmissible under the Federal Rules of Evidence. (Pl. Sprint Opp. 6). The Court disagrees and addresses each evidentiary objection in turn.

To begin, Plaintiff argues that the Court cannot consider the Keep Affidavit because (i) Ms. Keep has no personal knowledge of the subpoenas, and (ii) her statements constitute inadmissible hearsay under Federal Rule of Evidence Rule 802. (Pl. Sprint Opp. 11). Contrary to Plaintiff's assertion, it is well established that affidavits of knowledgeable witnesses may be submitted in support of a summary judgment motion. *See Patterson* v. *Cty. of Oneida, N.Y.*, 375 F.3d 206, 219 (2d Cir. 2004). Ms. Keep's affidavit is based upon a combination of her personal knowledge of Sprint's business records and the records themselves, which, as discussed later in this Opinion, fall within an exception to the hearsay rule. (Feb. 2019 Keep Aff. ¶ 2). For that reason, the Court is not precluded from considering the affidavit.

In addition, Plaintiff implores the Court not to consider the STS screenshots of the relevant subpoena request and compliance information, attached as four exhibits to the Keep Affidavit. (Pl. Sprint Opp. 11-12). These exhibits, Plaintiff claims, are inadmissible on three grounds: (i) as hearsay; (ii) in violation of the best evidence rule; and (iii) because they were "suspiciously modified." (*Id.*). None of Plaintiff's arguments has merit.

*First*, the records from Sprint's compliance database were maintained in the ordinary course of business (Feb. 2019 Keep Aff. ¶ 2) and therefore are admissible under the business records exception of Federal Rule of Evidence 803(6).  *See United States* v. *Kaiser*, 609 F.3d 556, 574 (2d Cir. 2010). *Second*, the screenshots do not violate the best evidence rule.  Under Federal Rule of Evidence 1002, a party generally must prove the content of a writing by introducing the original.  However, "an original is not required, and secondary evidence may be admitted to prove the content of a writing, if 'all the originals are lost or destroyed, and not by the proponent acting in bad faith.'"  *Crawford* v. *Tribeca Lending Corp.*, 815 F.3d 121, 127 (2d Cir. 2016) (quoting Fed. R. Evid. 1004(a)).  As outlined in the Lueker Affidavit, the original subpoenas have been lost, and not on account of Sprint's bad faith.  Therefore, it is within this Court's discretion to accept the exhibits to prove that Sprint received, and complied with, four subpoenas from DANY.

*Finally*, Plaintiff's argument that the information in STS was "suspiciously modified" is based on a misunderstanding.  Each of the screenshots provided by Sprint includes a column labeled "Last Update Date." (Feb. 2019 Keep. Decl., Ex. 1-4).  Those dates range from May 2014 to March 2016.  (*Id.*).  Plaintiff asserts that these dates indicate that Sprint tampered with the original information in STS.  (Pl. Sprint Opp. 2, 13).  However, the dates are merely a reflection of Sprint's decision to update its system and migrate all of STS to a new version.  (April 2019 Keep Aff. ¶¶ 6-9).  Due to the size of STS, the migration occurred in waves over a period of time, not all at

once.  (*Id.* at ¶ 8).  The Last Update Date in Exhibits 1-4 reflects the date on which those individual records were migrated to the new system, a process that did not alter any of the information contained in STS.  (*Id.* at ¶¶ 9-10).

### b.  The Court Grants Sprint's Motion for Summary Judgment and Denies Plaintiff's Cross-Motion

Having determined that it may consider the Keep Affidavit and Exhibits 1-4, the Court now turns to the merits of the parties' cross-motions. The basis of all of Plaintiff's claims is that Sprint willfully disclosed his personal communications to government entities "without the required legal authority." (Compl. ¶¶ 87, 89).  However, the record clearly indicates that Sprint disclosed Plaintiff's telephone records in response to four subpoenas.  Aside from conclusory allegations, Plaintiff provides no information to the contrary.

The SCA, which governs the release of electronic records, provides that a good faith reliance on a court order is a complete defense to civil or criminal charges.  *See* 18 U.S.C. § 2707(e) ("A good faith reliance on a court warrant or order, [or] a grand jury subpoena ... is a complete defense to any civil ... action brought under [the SCA] or any other law.").  Here, where there is no dispute of material fact as to whether Sprint relied on subpoenas when providing Plaintiff's information to government entities, the Court must grant summary judgment in favor of Sprint.  *See Brown* v. *Sprint Corp. Sec. Specialist*, No. 17 Civ. 2561 (JS) (ARL), 2019 WL 418100, at *4-6 (E.D.N.Y. Jan. 31, 2019) (dismissing a *pro se* plaintiff's Fourth Amendment claims when Sprint relied on a subpoena in disclosing plaintiff's records).

### c. The Court Denies Plaintiff's Rule 56(d) Application for Discovery

In the alternative, Plaintiff argues that summary judgment is premature and moves for additional discovery, pursuant to Federal Rule of Civil Procedure 56(d). Under Rule 56(d),

> [i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: [i] defer considering the motion or deny it; [ii] allow time to obtain affidavits or declarations or to take discovery; or [iii] issue any other appropriate order.

Fed. R. Civ. P. 56(d).

Discussing the analytically-similar predecessor rule to Rule 56(d), Rule 56(f), the Second Circuit instructed that:

> A court can reject a request for discovery, even if properly and timely made through a Rule 56(f) affidavit, if it deems the request to be based on speculation as to what potentially could be discovered. "Rule 56(f) is not a shield against all summary judgment motions. Litigants seeking relief under the rule must show that the material sought is germane to the defense, and that it is neither cumulative nor speculative," and a "'bare assertion' that the evidence supporting a plaintiff's allegation is in the hands of the defendant is insufficient to justify a denial of a motion for summary judgment under Rule 56(f)."

*Paddington Partners* v. *Bouchard*, 34 F.3d 1132, 1138 (2d Cir. 1994) (citations omitted); *accord Alphonse Hotel Corp.* v. *Tran*, 828 F.3d 146, 151 (2d Cir. 2016); *see generally Nationwide Sales & Servs. Inc.* v. *Envirocare Techs. Int'l, Ltd.*, No. 16 Civ. 6617 (GRB), 2018 WL 2436969, at *8 (E.D.N.Y. May 30, 2018) (collecting cases under Rules 56(d) and 56(f) where the Second Circuit has found affidavits to be insufficient).

Plaintiff seeks additional discovery "to confirm whether additional disclosures were made, whether subpoenas were used each time, and whether the evidence [Sprint] proffered was tampered with[.]" (Pl. Sprint Opp. 10). He argues that full discovery on these issues is warranted due to "the questionable nature in which Sprint conducts its record searches, their lack of due diligence, and their overall bad faith." (*Id.* at 19). The Court disagrees.

Plaintiff's conclusory allegations of incomplete discovery are an insufficient basis under Rule 56(d) to deny Sprint's motion. As a general matter, this Court has discretion to reject a request for discovery "if the request is based only on speculation as to what potentially could be discovered[.]" *Crye Precision LLC* v. *Duro Textiles, LLC*, 689 F. App'x 104, 108 (2d Cir. 2017) (summary order). Here, Sprint has already provided extensive disclosures regarding this issue. Sprint not only has conducted a thorough review of its own system, but has worked with DANY and the U.S. Attorney's Office to provide any responsive documents. Despite the previously-produced discovery, Plaintiff claims that there could be other instances of disclosure that were not in response to legal process. As the Second Circuit has made clear, Rule 56(d) does not permit Plaintiff to engage in a "'fishing expedition' in the hope that he could come up with some tenable cause of action." *Waldron* v. *Cities Serv. Co.*, 361 F.2d 671, 673 (2d Cir. 1966), *aff'd sub nom. First Nat'l Bank of Ariz.* v. *Cities Serv. Co.*, 391 U.S. 253 (1968). Because Plaintiff has merely speculated as to the existence of other documents, his request for further discovery is denied.

### 4. The Court Denies Plaintiff's Motion for Sanctions Against Sprint

Finally, the Court addresses Plaintiff's motion for sanctions against Sprint, filed on January 31, 2019. (Dkt. #267). In *Corley II*, the Court noted that it would address Plaintiff's sanctions motion when addressing Sprint's renewed motion for summary judgement. *See Corley II*, 365 F. Supp. 3d at 464 n.25.

Plaintiff alleges that Sprint committed fraud on the Court when it represented in its original motion papers that it had not made any disclosures regarding Plaintiff to government entities. (Pl. Sanctions Br. 24). In particular, Plaintiff argues that Sprint presented a falsehood to the Court when it claimed that it "could not locate these subpoenas because they never received one" (*id.* at 25), and that "[t]hese records were likely provided after a verbal or written request from ADA David Stuart" (*id.*). As a result, Plaintiff urges the Court to impose sanctions on Sprint pursuant to the Court's inherent powers. (*Id.* at 24). In particular, he seeks sanctions in the amount of $4,000 and asks the Court to permit full discovery on the issue. (*Id.*).

Having carefully considered the parties' submissions, the Court concludes that sanctions are not warranted. *First*, for the reasons discussed earlier in this Opinion, the Court does not believe that additional discovery is appropriate. *Second*, although the Court is disheartened by the misstatements in Sprint's initial briefing, monetary sanctions are not warranted. The Court finds no evidence that Sprint intentionally misled the Court in its motion papers or that it acted in bad faith. To the contrary, the parties' submissions

32

make plain that Sprint engaged in an open dialogue with Plaintiff, and that after receiving additional information, Sprint acted diligently to conduct a second search, and promptly provided both Plaintiff and the Court with the resulting information.

On the record before it, the Court cannot find that Sprint acted in bad faith, or that it intended to cause unnecessary delays or increase the cost of litigation. The Second Circuit has explained that, under Rule 11, a factual statement "can give rise to the imposition of sanctions only when the particular allegation is utterly lacking in support." *Kiobel* v. *Millson*, 592 F.3d 78, 81 (2d Cir. 2010) (internal quotation marks and citation omitted). It has further explained that "[b]ad faith is the touchstone of an award under [28 U.S.C. § 1927]," and that district courts should exercise their inherent power where a party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *United States* v. *Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen and Helpers of America, AFL-CIO*, 948 F.2d 1338, 1345 (2d Cir. 1991) (internal quotation marks and citation omitted). Because the Court believes that Sprint's statements to the Court were not made in bad faith, the Court will not impose sanctions on Sprint. Accordingly, Plaintiff's motion for sanctions is denied.

**CONCLUSION**

For the reasons stated in this Opinion, Blackberry's motion to dismiss and Sprint's motion for summary judgment are GRANTED. Plaintiff's cross-motions as to both Defendants are DENIED. The Clerk of Court is directed to terminate the motions at docket entries 283, 304, and 317.

SO ORDERED.

Dated:     August 15, 2019
           New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge


*Sent by First Class Mail to:*
Royce Corley
Reg. No. 68011-054
FCI Petersburg Low
P.O. Box 1000
Petersburg, VA 23804-1000